GEORGE W. BALLOU

*v.*

THE UNITED STATES FLOUR MILLING COMPANY.

[Submitted July 15th, 1904.    Decided July 29th, 1904.]

Where a case presented in the chancery court is substantially like a former case carried from such court to the court of errors and appeals, the chancery court is bound to follow such decision in the court of errors and appeals in the second case, though questions are raised which were not considered in the former suit.

In insolvency.

This is a petition by the receivers of an insolvent corporation praying for instructions from this court as to what disposition they shall make of a claim on behalf of the State of New Jersey for state franchise taxes which have accrued since the date of the making of the decree of insolvency herein.

The precise language of the prayer is:

"That they may be advised whether the said claim of the State of New Jersey is a claim against the assets of the said United States Flour Milling Company, and, if a claim at all, whether it is a preferred claim against the said corporation, and, if so, out of what assets it is payable, and what steps, if any, it is the duty of your petitioners to take in the premises."

The body of the petition states, in brief, 'that the assets of the corporation, at the time of its insolvency, were all actually located in three other states of the union, and that none of them had any *situs* in the State of New Jersey; that the receivers' possession of those assets was obtained by legal proceedings, taken in the courts of the several foreign states, whereby they were appointed ancillary receivers in those states; that those assets were quite insufficient to pay all the debts; that

none of the assets have ever been brought into this state; that by the laws of the several foreign states no preference can be given to the claim for taxes on the part of the State of New Jersey, and that this state would not be admitted as a creditor for any taxes which accrued after the date of the decree of insolvency, but that the assets would be divided among the creditors existing at that time.

The case was heard on this petition without evidence, and, of course, upon the assumption that the allegations of the petition were true.

*Mr. Robert H. McCarter,* attorney-general, for the state.

*Mr. Sherrerd Depue,* for the receivers.

PITNEY, V. C.

My reading of the petition does not enable me to determine whether the assets which accrued to the receivers in the several foreign jurisdictions are still within the practical control of those jurisdictions, so that the receivers cannot dispose of them without the several orders of those courts, or whether they are now within the absolute control of those receivers, subject only to the order and control of this court.

If the former is the true situation, then it seems to me that the question, so elaborately argued by counsel for the receivers, is, for present purposes, merely academic, and the present proceedings useless.

Manifestly, until the receivers are at liberty to follow the instructions of this court in the matter submitted, it is useless to give those instructions.

But, since that point was not taken by the attorney-general, I shall, very briefly, consider the question argued, and I do this simply because it does not seem, hitherto, to have been presented to or considered by any of the courts of this state in their dealings with insolvent corporations.

The case of *Crews* v. *United States Car Co., 57 N. J. Eq. (12 Dick.) 357,* and *60 N. J. Eq. (15 Dick.) 514,* seems to be on all

fours with this case, but the question now presented was not discussed, either by the chancellor, in this court, nor by the court of errors and appeals, in its review and reversal of his decree in that cause.

I shall abbreviate the argument and mention some of the cases cited as authorities on behalf of the petitioners:

1. That this state has, independent of statutory provision, no right of preference over other creditors for the payment of taxes due to it. This is especially true of a tax not a tax upon property. Citing *Freeholders* v. *Bank, 29 N. J. Eq. (2 Stew.) 268.* and *30 N. J. Eq. (3 Stew.) 311.*

2. The statutory provision for preference can have no extra-territorial force. If it could be held that the annual license fee here claimed is a tax proper, and a lien upon property within the state, that lien does not extend to and rest upon property beyond its limits.

3. The fund out of which the state claims the preference in this case is composed wholly of the proceeds of property and operations which never had any actual or legal *situs* in the State of New Jersey, but the *situs* of which was and is entirely in foreign jurisdictions, and such fund was never actually brought into the State of New Jersey by the receivers.

4. The receivers, only one of whom is a resident of New Jersey, came into possession of said property and funds by virtue of their appointment as such receivers by the several courts having territorial jurisdiction of the property and funds, upon suits brought in such courts for such purpose.

The receivers were not content to attempt to possess themselves of the property in a foreign jurisdiction by the uncertain right so to do arising out of their appointment by this court. By so doing they subjected all the property acquired in those jurisdictions to the control of their respective courts. *Hurd* v. *Elizabeth, 41 N. J. Law (12 Vr.) 1; Moore* v. *Bonnell, 31 N. J. Law (2 Vr.) 90; Oakes* v. *Meyers, 68 Fed. Rep. 807; Reynolds* v. *Stockton, 140 U. S. 254; Sands* v. *Greeley Co., 88 Fed. Rep. 130; 31 C. C. A. 424; National Trust Co.* v. *Miller, 33 N. J. Eq. (6 Stew.) 155; Irwin* v. *Granite State Provident Association, 56 N. J. Eq. (11 Dick.) 244.*

5. Hence those courts surely have the right to determine what creditors have just claim to so much of the fund in question as had its *situs* or origin in their respective jurisdictions and their respective priorities.

6. It sufficiently appears that those courts would neither allow the state franchise taxes which have accrued since the date of the decree of insolvency, nor give priority to them if allowed, and that they have power to control the action of the receivers in that behalf.

7. This court ought, in dealing with those questions, out of considerations of comity, to be governed by the rules which govern those courts, precisely as if those courts had actively intervened.

Many other authorities were cited by the receivers in support of the foregoing propositions.

I have said that the propositions just stated and the questions arising thereon were not dealt with or considered in the case of *Crews* v. *United States Car Co., supra.* That case, in its circumstances, was substantially like the present, and, although these questions were not raised or dealt with therein, it binds me, and I must advise a decree in accordance with it.