CITY OF ATLANTIC CITY, appellant-complainant,

*v.*

ASSOCIATED REALTIES CORPORATION, respondent-defendant.

[Argued January 6th, 1908. Decided June 15th, 1908.]

1. The predecessors in title of the defendant, by deed, conveyed to the city of Atlantic City, an easement or right of way over a strip of land on the ocean front, which deed contained a clear restriction against placing any building or structure upon the ocean side of the lands conveyed, with a proviso reserving the right to build a pier of a certain kind and length on which the owners shall not permit the sale of any commodities "and be confined to charging only an entrance fee." The defendant erected a pier of the kind and length permitted and charged visitors thereto an entrance fee of ten cents. In addition it charged such visitors after they had entered upon the pier additional sums for the hire and

use of roller skates and for checking garments.—*Held*, that such charges, other than the entrance fee, were made in violation of the covenant that the pier owner should "be confined to charging only an entrance fee."

2. The city of Atlantic City, as trustee for the public, has a right to accept a deed for a grant to the public of a right of way over lands on the ocean front for the purpose of a boardwalk, the deed containing a negative covenant granting in effect also a right of light, air and view over and across the oceanward land from the boardwalk, notwithstanding this latter right is limited by a reservation to the donors of the privilege of placing thereon a certain kind of structure, when the use to which those structures shall be confined is defined for the purpose of regulating the kind of structure and the number of structures which could, and would likely be, erected.

3. An acceptance of property dedicated to the public use may be shown by an instrument in writing executed by the proper authorities on behalf of the public, or by the use and improvement of the property dedicated, by the duly authorized authorities.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Bergen, whose opinion is reported in *72 N. J. Eq.* (*2 Buch.*) *634.*

*Mr. Harry Wootton, Messrs. Godfrey & Godfrey* and *Mr. Gilbert Collins,* for the appellant.

*Messrs. Thompson & Cole,* for the respondent.

The opinion of the court was delivered by

TRENCHARD, J.

This is an appeal from a decree of the court of chancery dismissing the bill of the complainant, the city of Atlantic City.

The bill seeks to restrain the defendant from charging any fee to visitors to its pier, or any part thereof, except an entrance fee.

The rights of the parties depend upon the legality and construction of an easement deed made by the predecessors in title of the defendant to the complainant.

In 1889 (*P. L. 1889 p. 206*) an act was passed empowering cities located on or near the ocean, and embracing within their limits or jurisdiction any beach or ocean front, by ordinance to lay out and open streets and drives, and to construct public walks

along the beach or ocean front, and to grade and otherwise improve the same and to regulate the use thereof.

Subsequently, several supplements to this act were passed. By a supplement of 1890 (P. L. 1890 p. 159) it was provided that any walk constructed upon any such street so laid out should be elevated above the surface of the ground and be constructed on piling or other supports placed in the street; and when such elevated walk should be constructed, the city could permit approaches to be made to connect with it from contiguous property on the landward side or side most remote from the ocean. By this supplement the city was authorized to accept any dedication of lands or rights which might be made for the purpose of enabling such city to open and lay out such street or for the purpose of constructing any such walk, or for the purpose of making any improvement in or to the same.

By a further supplement of 1896 (P. L. 1896 p. 18) the common council was authorized to relocate, in whole or in part, any public walk or walks which might have been or which might thereafter be constructed or built.

Under the authority thus given the city of Atlantic City laid out a street sixty feet wide along the ocean front and constructed thereon a public boardwalk elevated on posts and, in the year 1896, relocated and laid out a street sixty feet wide along the beach or ocean front, and constructed thereon a new public boardwalk forty feet wide and about four miles long of a more permanent and substantial character, elevated on posts.

The owners, with one or two exceptions, of ocean-front land over which the sixty-foot strip extended, on April 30th, 1896, executed and delivered to the city the right of way agreement or boardwalk dedication deed by which they dedicated over their respective lands the sixty-foot strip and inserted in their deeds covenants protecting the use by the public of the sixty-foot strip and boardwalk, and the lands on the ocean side thereof, and prohibiting the erection of buildings to the oceanward of the walk for the purpose of preserving a continuous ocean view from the boardwalk.

Among such owners who executed such easement deeds were William Bowler, Elias J. Molineaux, George C. Governator and

John H. Wahl, who were the predecessors in title of the defendant corporation.

In these deeds the grantors covenanted, among other things, as follows:

"The said parties of the first part, their heirs, executors, administrators and assigns, shall not and will not put or erect or allow to be placed or erected on the lands hereby granted or on the oceanside thereof any building or structure, except as provided by ordinance, * * * and that these covenants shall attach to and run with the lands and premises hereby granted and the lands on the ocean side thereof so long as the same shall be used for the purpose of a street and a public steel, board or plank walk, and that the same may be enforced or its breach or non-observance may be restrained or enjoined at any time by the said party of the second part, its successors and assigns; * * * *provided, however*, that the within grantors shall not be prohibited from building a pier in front of their property and connecting the same to the new walk to be erected, and upon the further condition that the said pier shall be at least one thousand feet in length extending into the ocean beyond the present sixty feet wide strip and constructed of iron or steel, and shall not permit the sale of any commodity upon the same and be confined to charging only an entrance fee."

The sixty-foot strip so dedicated by the predecessors in title of the defendant ran over the several tracts of land owned by them and constituting a tract of land on the western line of Arkansas avenue, extending southerly two thousand feet to the exterior line fixed by the state board of riparian commissioners, having a frontage of two hundred feet on the ocean front, which several tracts of lands by mesne conveyances became vested in Clement J. Adams, who, together with his wife, by deed of March 1st, 1906, conveyed to the defendant corporation.

The defendant subsequently built a pier upon this property on the ocean side of the sixty-foot strip and attached the same to the boardwalk.

The testimony shows that the defendant charged visitors to its pier an entrance fee of ten cents. In addition it charged such visitors after they had entered upon the pier additional sums for the hire and use of roller skates and for checking garments. It is insisted that these charges, other than the entrance fee, were made in violation of the covenants already recited.

The main question is whether, assuming that the agreement is valid, the defendant has violated its terms by its charge for the hire and use of roller skates and for the checking of garments.

We think that this charge is in violation of the covenant.

The easement deed must be construed so as to effectuate, if possible, the intention of the parties, and to fulfill the common purpose of the grantors, unless inconsistent with settled rules of law. *13 Cyc. 601.*

The covenants therein contained show that the owners of the beach-front lands were actuated by a common purpose to carry into effect by their joint action a general plan of mutual benefit to themselves and to the public to preserve an open view ocean-ward from the elevated public walk, and to that end to restrict the use of the land, and the business to be conducted, on the ocean side of the walk.

The language of the covenant that the pier owner "shall not permit the sale of any commodity upon the same, and be confined to charging only an entrance fee," seems plainly to admit of but one construction—namely, that no pecuniary exaction beyond a fee for entrance to the pier is allowable.

Of course, fees charged a visitor, after entering the pier, in addition to a fee paid for entrance to the pier, are not entrance fees, and such charges, not being entrance fees, are in violation of the literal words of the covenant.

In *Atlantic City* v. *Atlantic City Steel Pier Co., 62 N. J. Eq. (17 Dick.) 139,* involving a construction of the same covenant with respect to a charge of an additional fee for reserved seats on the pier and additional fees for entrance to an enclosed hall on the pier, Vice-Chancellor Reed in disposing of the question said: "I am constrained to the conclusion that these charges are in violation of the terms of the agreement. Reading the entire clause, not merely that part directed against the sale of commodities, but including the limitation in respect to what should be charged, the natural construction of the agreement seems to me to be that any additional charge for admission to any part of the pier, after the payment of the entrance fee, conflicts with the restriction which the grantors imposed upon themselves, namely, that they should be confined to charging only an entrance fee.

It seems too obvious for discussion, that the fees charged after the visitor has entered upon the pier are not entrance fees. If not, then the purpose of the agreement, as well as its literal words, forbid this collection. It is said on the part of the defendant that the covenant contained in the proviso is an enabling and not a restrictive covenant. It is, however, perceived that the agreement itself contains a clear restriction against placing any obstruction upon the ocean side of the boardwalk. The proviso merely modifies the restriction by relieving the grantor from it, so far as to permit the building of a pier, of a certain length upon which certain things shall be done. The restriction is operative, except in so far as the proviso relieves it of its operative force. The grantor, therefore, must show that its structure, in form and in use, comes within the exceptive words of the proviso."

In the present case the learned vice-chancellor said that the "hiring a pair of skates for a limited period to a person going on the pier hardly falls within the description of a sale of 'any commodities,' nor can it be said to be a charge of an additional entrance fee," and concluded, therefore, that the covenant was not violated.

While the charge for hiring skates and checking garments on the pier may not be considered as an additional entrance fee, yet it is certainly a charge made in addition to an entrance fee, after a person has entered upon the pier and paid his entrance fee, and is a charge unassociated with the charge for entrance to the pier, and is in direct violation of the language of the covenant that the pier owners "shall be confined to charging only an entrance fee." If the extra charge cannot be classified as an entrance fee, then it must be an additional charge and such a charge as is forbidden by the language of the covenant.

There is no distinction, from the viewpoint of the covenant, between the character of the charge for the hire of skates and the charge for the hire of reserved seats such as was properly held in *Atlantic City* v. *Atlantic City Steel Pier Co., supra,* to be a violation of the covenant.

The fact that in the case *sub judice* the payment of the entrance fee entitled the visitor to go to any part of the pier and

to hear and see everything there provided for the entertainment of visitors does not alter the construction of the covenant. It will not do, in view of the language of the covenant, to say that, because the visitor is not satisfied with the entertainment provided and desires to hire a pair of skates, he must pay for them. Under such a construction the meaning and operative force of the covenant would be made to depend upon the notion or fancy of the visitor to the pier as to the kind of entertainment he desires. The rights of the parties can rest upon no such basis, but must depend upon a proper construction of the covenant of the easement deed.

But it is insisted by the defendant that the deed is *ultra vires* and the covenant therefore unenforceable.

Substantially the same objection was raised by the defendant in the case of *Atlantic City* v. *Atlantic City Steel Pier Co., 62 N. J. Eq. (17 Dick.) 139.* The vice-chancellor there says: "This insistence is grounded upon the terms of the supplement of 1890, by which the city is authorized to accept any dedication for the purpose of enabling the city to open and lay out a street and build and improve a boardwalk. It is argued that while a dedication of the land upon which a boardwalk is to be built is within the power so granted to the city, an agreement in respect to other lands is entirely aside from the provisions of the act. The language of the act is broad. It does not confine the city to the acceptance of land upon which the walk is to be constructed. It may accept any lands or rights for the purpose of making any improvement in or to the street or walk. But assume that the act is as narrow as the defendant insists, it cannot be successfully contended that Atlantic City, as trustee for the public, would not have the right to accept a dedication of lands for a public purpose without express legislative authority. Such a grant is effectual even without trustees. All the land oceanward of the boardwalk could have been dedicated by its owners as a park or boulevard or public bathing ground, or for any other purpose. Now, the agreement, as I construe it, contains a grant to the public of a right in the nature of an easement. It, indirectly by a negative covenant, grants a right of light, air and view over and across the oceanward land from the

boardwalk. This right is limited by a reservation to the donors of the privilege of placing thereon a certain kind of structure. And the uses to which those structures shall be confined is defined, for the purpose of regulating the kind of structure and the number of structures which could be, and would likely be, erected. The owners have themselves limited the uses to which such structures may be put. Such a restricted grant, in my judgment, the city may accept, and, as the representative and trustee of the public, may invoke the judicial arm of the government to protect."

We think that the city of Atlantic City, as trustee for the public, has the right to accept a deed for a grant to the public of a right of way over lands on the ocean front for the purpose of a boardwalk, the deed containing a negative covenant granting in effect also a right of light, air and view over and across the oceanward land from the boardwalk, notwithstanding this latter right is limited by a reservation to the donors of the privilege of placing thereon a certain kind of structure, when the use to which those structures shall be confined is defined for the purpose of regulating the kind of structure and the number of structures which could, and would likely be, erected. And so are the authorities. *20 Am. & Eng. Encycl. L. (2d ed.) 1186, 1187; 13 Cyc. 459; 460.*

It is again insisted that the easement deed was never accepted by the city.

Acceptance may be shown by an instrument in writing executed by the proper authorities on behalf of the public or by the use and improvement of the property dedicated, by the duly-authorized authorities. *Abb. Mun. Corp. 1767.* In the present case acceptance is shown by both.

All other objections raised have been already sufficiently answered.

The complainant is entitled to have an injunction restraining the defendant, its officers, servants, agents and employes, from charging visitors to its pier any fee or sum of money for the hire and use of roller skates, or for checking garments, in addition to an entrance fee to the pier or after entrance to the pier.

The decree must therefore be reversed, and the record remitted to the court of chancery in order that a decree may be made in accordance with this opinion.

The complainant is entitled to costs in the court of chancery and in this court.

*For affirmance*—None.

*For reversal* — THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BOGERT, VROOM, GREEN, GRAY, DILL—11.