SEASIDE IMPROVEMENT COMPANY et al., complainants,

*v.*

ATLANTIC CITY STEEL PIER COMPANY et al., defendants.

[Decided May 23d, 1932.]

*Mr. John D. McMullin* and *Mr. Emerson L. Richards,* for the complainants.

*Messrs. Thompson & Hanstein* and *Mr. Merritt Lane,* for the defendant Atlantic City Steel Pier Company.

*Mr. Anthony J. Siracuso, Jr.,* for the city of Atlantic City.

*Messrs. Cole & Cole,* for the Central Pier Company.

INGERSOLL, V. C.

The defendant, Atlantic City Steel Pier Company, is the owner of certain premises in Atlantic City, located on the ocean side of the boardwalk and to the westward of Virginia avenue extending one hundred and fifty feet therefrom. The complainants are adjoining property owners to the east and west, respectively, of the lands of the defendant company.

By agreement dated April 30th, 1896, and recorded June 16th, 1896, in the clerk's office of Atlantic county in deed book 206, page 22, George W. Jackson and wife, predecessors in title of the defendant, with a large number of other grantors, owners of land fronting on the then boardwalk, made and executed what is generally known as the "Boardwalk Easement Deed." In the said easement deed, the grantors covenanted:

"We will not put or erect, or allow to be placed or erected, on the land hereby granted, or on the ocean side thereof, any building or structure except as by ordinance provided, and covenant that the above covenant shall run with the land; provided, that the grantors shall not be prohibited from building a pier in front of their property, and connecting the same to the new boardwalk about to be erected; and upon the further condition that the said pier shall be at least one thousand feet in length, extending into the ocean beyond the present sixty-foot strip, and constructed of iron or steel, and shall not permit the sale of any commodities upon the same, and be confined to the charging only an entrance fee."

Many years ago there was erected upon this property a pier known as the Atlantic City Steel Pier.

It has been held (a) that the said easement deed was effective; (b) that the present defendant was estopped from

denying its efficiency; (c) that the agreement itself contains a clear restriction against placing any obstruction upon the ocean side of the boardwalk; (d) that the restriction is operative except in so far as the proviso relieves it of its operative force; (e) that the grantor, therefore, must show that its structure, in form and use, comes within the excepted word of the proviso; (f) that the covenant is to secure an easement and easements may be imposed upon the land by its owner and the burden of such imposition will run with the land. *Atlantic City* v. *Atlantic City Steel Pier Co., 62 N. J. Eq. 139.*

Recently, application was made by James Ferry, Incorporated, to the building inspector of Atlantic City for a building permit permitting said James Ferry, Incorporated, to build for the Atlantic City Steel Pier Company, upon the said land and premises of the company, at a cost of about $75,000, of what the building inspector terms a basement and ramp, two hundred and one feet and one inch as it runs along the boardwalk, the proposed construction to extend the entire width of the defendant's property and forty feet from the building line into Virginia avenue, "the floor to be of concrete, the walls of concrete and steel and to run right up to the floor of the present pier, and the floor of the present pier will probably be the ceiling." The length of said structure, extending seaward, is to be two hundred and ninety-six feet and nine inches. Upon the filing of plans showing the building to be constructed, a permit was issued by the said building inspector.

Upon the filing of the bill on April 25th, 1932, an order to show cause was granted, in which was included a restraint. Application was made by the defendant to modify the restraint, which application was refused. Upon the hearing of the order to show cause, it was testified that the permit which had been granted by the city of Atlantic City for the construction in accordance with the plans filed had been revoked by the city; that between the date of the order to show cause and its return date, amended plans had been left at the building inspector's office showing a change in construction in that

the solid wall was moved back from the edge of the ramp to the deck line, and making a change in the ramp, bringing it toward the pier and separating the work into two parts, one the ramp and the other the structure underneath the deck of the pier.

It is manifest that this new structure is not, of itself, a pier, and it is also manifest that if it was, of itself, a pier, it does not extend one thousand feet, nor is it such a structure resting upon a pier or piers, as was held permissible in *Chelsea Land and Improvement Co.* v. *Westcott, 75 N. J. Eq. 367*. Both sets of plans show that this structure would not only extend the width of the present pier but beyond it and into the sidewalk and bed of the street.

It is unnecessary to express any opinion upon the use of concrete in this construction, or whether that would be in violation of that clause of the covenant referring to "iron or steel." It was testified by the building inspector that the plans call for the walls to be of concrete and steel. It is well known that concrete has become used as a building material to a great extent in the last few years, either by itself or when reinforced by steel or other metal. This building, as set forth in the plans, is not, as I have said before, a pier, neither do the plans indicate, with the exception of a very small space, that it is to be used for any purpose in connection with the present pier. This exception indicates that a small part of this building, although there is no direct evidence upon that point, is or may be used for toilet facilities for patrons of the pier. It is manifest that the said space enclosed is a room or rooms placed upon the beach to the seaward of the boardwalk and within the limits of the grant by Jackson, and that it does not come within the proviso in said covenant set forth.

Vice-Chancellor Grey, in *Atlantic City* v. *The New Auditorium Pier Co., 63 N. J. Eq. 644* (at *p. 673*), said:

"The defendant also claims that the structure which it is in process of erecting, is, in fact, a pier, within the recognized exceptions of the deed and covenant made by Loper and others to the city. The proof on this point is unrefuted—

that the defendant company is engaged in driving wooden piling. The proviso in the deed requires such piers to be 'constructed of iron or steel.'

"The complainant's counsel contend that the true construction of the proviso in the covenant deed respecting the erection of piers is that it reserved to each grantor in that deed the right upon complying with the terms prescribed, to erect one pier in front of the property he has conveyed. They insist that any other construction, which would allow an unlimited subdivision of the grantors' lots fronting on the ocean, and the erection of a pier on each subdivision, would result in the entire shutting in of the boardwalk from ocean view and breezes, and thus defeat the general object. One pier [the auditorium pier] has been erected in front of the Loper property since the making, by Loper and others, of the deed of April 30th, 1896, to the city, and this has exhausted the permission in the proviso. The complainant also insists that the construction to be given this proviso, allowing a pier to be built in exception to the general restriction against the erection of any structures oceanward of the boardwalk, has been settled by the decision of Vice-Chancellor Reed in the case above cited, where he holds that the grantor, who claims the building which he is erecting to be within the exception as a pier, 'must show that its structure, in form and use, comes within the exceptive words of the proviso.' The complainant says that the defendant, though plainly proven to be erecting a new structure to the oceanward of the boardwalk, has neither shown, nor attempted to show, that it is in compliance with the requirements of the exceptive words of the proviso respecting piers.

"The defendant also claims that the structure in question is an extension of the auditorium pier already erected, to be used with and as part of it, and that this justifies the proposed improvement. To which reply is made that it is a lateral addition to a completed pier, and, as proposed, lies parallel to the boardwalk; that such an addition is not within the contemplation of the proviso. That provides that each pier must be one thousand feet long, but makes no mention

of width. If each pier, after being erected, may have lateral additionals parallel to the boardwalk, the ultimate result will be that the sea view from the boardwalk and free passage of air to and from will be totally obstructed by the additions, and the general scheme would thus be destroyed.

"If it were necessary to determine any of these points, they should, in my view, be decided in favor of the complainant's contention."

Following the words of Vice-Chancellor Reed in *Atlantic City* v. *Atlantic City Steel Pier Co., supra,* as quoted by Vice-Chancellor Grey in *Atlantic City* v. *The New Auditorium Pier Co., supra,* in which it was held that the grantor, who claims the building which he is erecting to be within the exception as a pier, "must show that its structure, in form and use, comes within the exceptive words of the proviso," the defendant has not shown that the building is in compliance with the requirements of the exceptive words of the proviso respecting piers. In addition thereto, again quoting Vice-Chancellor Grey, "a lateral addition to a completed pier is not within the contemplation of the proviso."

While, of course, this court will not grant an injunction restraining a party from violating a municipal ordinance, its powers are not so limited that because a portion of the proposed structure is found to be intended to be erected upon a public street, it cannot restrain the construction of the building because of such fact. To say that the present construction is illegal because of an increase in its width, and then to say that this court would have no jurisdiction upon that point because such an increase in width would encroach upon the street, would be creating an unheard of situation.

Contention is made by the complainant that the building of this structure would interfere with the usage of the beach front or passage to and fro. The defendant, in its argument, says: "If the easement deed is to be construed in such a way as to prevent the defendant from erecting what it is supposed to erect, I say to your honor that the adoption of the deed has been so insistently violated again and again, that the easement deed has to be construed and it has to be con-

strued in a practical way, construed as it has been construed by the people of Atlantic City who own property along the boardwalk, and by the municipality of Atlantic City. It was construed recently. Your honor will find that there are no violations of the easement deed and, therefore, the easement deed was considered practical, but I repeat that these photographs show, and I have other exhibits in my hand, so many present violations of the easement deed, if it is to be construed to exclude every erection except a pier, in the sense of the piers which were then considered to be the structures standing up on long stilts, extending out over the water, * * * how long does your honor think that that easement deed can stand?"

The defendant further replied to the contention of the complainant—that the city has allowed such blocking of passage by permitting this defendant to place pipes, signs and other obstructions along and under said pier, and also similar obstructions to be placed under other piers, and a number of photographs, above referred to, showing such obstructions, and others showing a great number of obstructions under the boardwalk, have been offered in evidence.

The instances of obstructions under the steel pier are not of a substantial and permanent nature, except in so far as it may be said that an exposed pipe is of a permanent nature. Manifestly, the signs along the steel pier are not of a substantial nature but are, as stated, signs.

I do not see how the present defendants can obtain any relief by reason of the existence of these obstructions. Its intent is to build, for a certain distance oceanward of the boardwalk, a solid structure, extending from the ground level to the level of the boardwalk floor. There is nothing in the covenant set forth in the easement deed which reserves such right. There can be no doubt that the "piers" referred to in the easement deed were to be constructed upon piers or columns of iron or steel, in open-work construction, leaving at all times a greater or less degree of openings between the same.

I find no evidence of laches or acquiescence upon the part

of the complainants which would prevent them obtaining the relief prayed for.

It is noted that many of the obstructions blocking the passage along the land oceanward of the boardwalk are obstructions created by the present defendants. The greater number of the photographs are of obstructions underneath the boardwalk, which is a public street of Atlantic City. Such obstructions under the boardwalk cannot prevent the complainants from obtaining relief against these defendants.

The photographs showing obstructions under the boardwalk may be divided into two general classes, first, the comfort stations built by the city at the end of certain avenues and under the elevated boardwalk, and secondly the use of the space under the boardwalk for entrances and exits to places of business on the landward side thereof, and in several instances for valves or boxes for electric purposes, and in one or two instances for other purposes. It will be noted in many instances of photographs of the boardwalk, particularly those showing entrances and exits, the distance between the surface of the sand and the level of the boardwalk is comparatively little, requiring same to be banked or held up by planks, or otherwise, to furnish sufficient head room to pass thereunder.

While it is true that the ocean, from time to time, has receded and cast sand upon the beach, it has also, from time to time, cut into the beach, and there is and can be no measure by which man can anticipate the extent of such encroachments or recedings of the sea.

Atlantic City was made a party defendant. At the hearing, the assistant city solicitor stated: "So far as the city is concerned, we no longer wish to contest the application for the preliminary injunction or final injunction. Yesterday the city revoked the building permit that had been granted to the complainant on the ground that the building inspector improperly issued it and issued it contrary to law, and since the question of the breach of the easement deed and the park rights are alleged in these proceedings, the city wants to take the position that they want to actively prevent

any alleged encroachment infringement of our easement deed or park rights, so at this time we no longer desire to contest, as I said before, the application for the preliminary injunction. We are one of the parties defendant."

I am not unmindful of the fact that Vice-Chancellor Emery, in *Attorney-General* v. *Central Railroad Co., 68 N. J. Eq. 198* (at *p. 226*), said:

"The equitable rules relating to the effect of laches and acquiesence are enforced against the state when it is a suitor for equitable relief as well as against private suitors." And cited *Attorney-General* v. *Delaware and Bound Brook Railroad Co., 27 N. J. Eq. 1*, and cases cited (at *p. 7*). That case, however, stated further:

"The cases relied on by complainant's counsel as holding that where false representations have been made with a view to a particular purpose, which has been attained, the burden of proving the immateriality of the representation, and that the end was not attained by the deception, rests upon the grantee, were all cases in which the transactions were questioned between those who were the original parties to it, and while it was still practicable to procure the proofs by calling the grantors. *Smith* v. *Kay, 7 H. L. Cas. 750,* the leading case, was on this point a decision as to the facts admitted by a demurrer.

"One of the grounds upon which the denial of purely equitable relief, on the ground of laches, is often based is that by reason of the lapse of time and delay in seeking relief the party against whom it is asked has been put in a situation as to his proofs or otherwise, in which it would not be reasonable to place him, if the right is to be asserted. *Lutjen* v. *Lutjen (Court of Errors and Appeals, 1902), 64 N. J. Eq. 773, 780, 781; Rochefoucald* v. *Boustead (1897), 1 Ch. 196, 210,"* and the cases cited by the vice-chancellor in *Attorney-General* v. *Delaware and Bound Brook Railroad Co., supra.* In that case, Chancellor Runyon said:

"In the case before me, there is no purpresture; the structure, which is for a public purpose, and for the public advantage, is completed. It creates no impediment to the naviga-

tion of the river. It has been built *bona fide,* and there is cogent evidence of acquiescence on the part of the state in the construction which the defendants have put upon the law under which they have acted. Under such circumstances, an injunction will not be granted. *Attorney-General* v. *New Jersey Railroad and Transportation Co., 2 Gr. Ch. 136; Allen* v. *Chosen Freeholders, 2 Beas. 68; Attorney-General* v. *N. Y. and L. B. R. R. Co., 9 C. E. Gr. 49; City of Georgetown* v. *Alexandria Canal Co., 12 Pet. 93, 98; Attorney-General* v. *United Kingdom Electric Tel. Co., 30 Beav. 287; Attorney-General* v. *Eastern Counties Railway Co., 7 Jur. 806."*

There is no similarity in the present case to either of the cases in question, nor do I find any case which holds that New Jersey is an exception to the general rule that "laches is not imputable to the government" or the rule "that the neglects or omissions of public officers as to their public duties will not work an estoppel against the state."

Although Atlantic City has filed no pleadings and, therefore, has made no prayer in this cause, it seems unnecessary to state that it has not been proven that the city is in such laches that it would be unable to obtain relief should it become a moving party.

It was not intended or considered that the restraint in the order to show cause extended to an attempt to violate the rules above referred to, and that is, to restrain the defendants from violating an ordinance of the city or an act of the legislature, and though the wording of the restraint might so indicate, the restraint was that they desist from proceeding with the erection of any building under the present pier of the said Atlanic City Steel Pier Company.

The result is that the complainant is entitled to an injunction restraining the defendants from proceeding with the erection of the structure oceanward of the boardwalk and upon the lands owned by them upon which is located the steel pier.