The defendant Atlantic City Steel Pier Company, a corporation of the State of Delaware, seeks a removal of this cause to the United States District Court for the District of New Jersey, and has filed a petition therefor and the required bond.
This is one of two causes recently instituted to restrain any violation on the Steel Pier at Atlantic City of covenants voluntarily created by more than one hundred owners of land when the right of easement was given the city for the construction and maintenance of the present boardwalk in that city. The right to build a pier in front of their property was reserved by the donors and, subsequently, Steel Pier, the amusement pier of the defendant company, and other similar structures were erected. The covenant reads:
"We will not put or erect, or allow to be placed or erected, on the land hereby granted, or on the ocean side thereof, any building or structure except as by ordinance provided, and covenant that the above covenant shall run with the land; provided, that the grantors shall not be prohibited from building a pier in front of their property, and connecting the same to the new boardwalk about to be erected; and upon the further condition that the said pier shall be at least one thousand feet in length, extending into the ocean beyond the present sixty-foot strip, and constructed of iron or steel, and shall not permit the sale of any commodities upon the same, and be confined to the charging only an entrance fee."
In 1901 violations of this covenant on Steel Pier and on Young's Pier were charged, two bills of complaint were filed by the City of Atlantic City and the causes tried together. Similar decrees were therein made; the decree against the owners of Steel Pier "perpetually enjoining and restraining the Atlantic City Steel Pier Company, its attorneys, agents and servants from selling or causing, or permitting to be sold any commodity on the pier of the company at Atlantic City, and also, from selling any commodity or charging an additional fee for admission to the privileges of any particular part or place on the pier in addition to an entrance fee to the pier or after entrance to the pier." In the opinion filed by Vice-Chancellor Reed, AtlanticCity v. Atlantic City Steel Pier Co., 62 N.J. Eq. 139;49 Atl. Rep. 822, he, inter alia, said: *Page 513 
"The owners have themselves limited the uses to which such structures may be put. Such a restricted grant, in my judgment, the city may accept, and, as the representative and trustee of the public, may invoke the judicial arm of the government to protect. * * *
"The covenant in the present case, is, as already remarked, practically to secure an easement, and easements may be imposed upon the land by its owner * * * Then, again, this covenant is one of many similar covenants entered into by a body of covenantors as part of a common scheme for the mutual advantage of each and all such covenantors."
Steel Pier had been erected in 1898 by Atlantic City Steel Pier Company, a New Jersey corporation. On November 13th, 1925, surviving directors of that corporation, as trustees in dissolution, conveyed the pier premises to Steel Pier Company, a New Jersey corporation; subsequently the latter company amended its certificate of incorporation and changed its name to "Atlantic City Steel Pier Company." The officers and directors were Frank P. Gravatt, president; Flora Gravatt, his wife, secretary and treasurer; and Richard Endicott, assistant secretary.
The status of the City of Atlantic City, under the easement deeds, was defined by Vice-Chancellor Reed as "trustee for the public." In 1906 violations of the covenant again occurred on Steel Pier and again the city sought preventative relief in this court. City of Atlantic City v. Associated Realties Corp.,72 N.J. Eq. 634; 67 Atl. Rep. 937. Denied an injunction, the city appealed. The Court of Errors and Appeals said:
"There is no distinction from the viewpoint of the covenant, between the character of the charge for the hire of skates and the charge for the hire of reserved seats such as was properly held in Atlantic City v. Atlantic City Steel Pier Co., supra, to be a violation of the covenant. * * *
"The complainant is entitled to have an injunction restraining the defendant, its officers, servants, agents and employes, from charging visitors to its pier any fee or sum of money for the hire and use of roller skates or for checking garments in addition to an entrance fee to the pier or after entrance to the pier." 73 N.J. Eq. 721; 70 Atl. Rep. 345. *Page 514 
The matter of this covenant has been before this court nine times and five of those decisions have been reviewed by the Court of Errors and Appeals: City of Atlantic City v. Atlantic CitySteel Pier Co., supra. City of Atlantic City v. Young McSheaAmusement Co. (Chancery, 1901), 62 N.J. Eq. 147;49 Atl. Rep. 1135; reversed (Court of Errors and Appeals, 1902), 63 N.J. Eq. 831; 53 Atl. Rep. 168. Atlantic City v. New Auditorium PierCo. (Chancery, 1902), prelinary hearing, 63 N.J. Eq. 644;53 Atl. Rep. 99; Ibid. (Chancery, 1904), final hearing, 67 N.J. Eq. 284; 58 Atl. Rep. 729; reversed (Court of Errors andAppeals, 1904), 67 N.J. Eq. 610; 59 Atl. Rep. 158; reargument before the Court of Errors and Appeals was sought in 1905 by the city, Ibid., 67 N.J. Eq. 621; 63 Atl. Rep. 169. Evans v. NewAuditorium Pier Co., preliminary application (Chancery, 1902),63 N.J. Eq. 674; 53 Atl. Rep. 111; Ibid., final hearing, (Chancery, 1904), 67 N.J. Eq. 315; 58 Atl. Rep. 191; reversed
(Court of Errors and Appeals, 1904), Ibid., 67 N.J. Eq. 620;59 Atl. Rep. 1117; Atlantic City v. Associated Realties Corp.
(Chancery, 1907), 72 N.J. Eq. 634; 67 Atl. Rep. 937; reversed
(Court of Errors and Appeals, 1908), Ibid., 73 N.J. Eq. 721;70 Atl. Rep. 345. White v. Young's Pier and Hotel Co.
(Chancery, 1911), 78 N.J. Eq. 498; 79 Atl. Rep. 351; affirmed
(Court of Errors and Appeals, 1912), Ibid., 79 N.J. Eq. 597;82 Atl. Rep. 912. Atlantic City v. Young McShea AmusementCo. (Chancery, unreported, bill filed April 28th, 1902, docket 25, page 13); in this unreported opinion Vice-Chancellor Reed said: "Atlantic City, as grantee in the easement deeds, and as trustee for the public with reference to its rights under the grants and the general scheme of improvement, may sue to enforce its and the public's rights, so, also, may any co-grantor who joined in the gift of the easement, especially when the city has been requested to bring suit to vindicate any right under the easement deeds, and has refused to do so." Marlborough-Blenheim
v. Atlantic City (Chancery, 1925), 98 N.J. Eq. 129;129 Atl. Rep. 756; in this instance Vice-Chancellor Ingersoll, interalia, said: "A suit may go against the city if it attempts a * * * violation." Seaside Improvement Co. v. Atlantic City Steel *Page 515 Pier Co. (Chancery, 1932), 110 N.J. Eq. 510;160 Atl. Rep. 625.
The eighteen individual complainants herein are all citizens of New Jersey, and the corporate complainant is a corporation of this state. Each is engaged in the restaurant business in Atlantic City, and three are property owners and taxpayers there. If the covenant is violated and food and drink are sold on the pier, direct competition with the complainants in their business results. Their bill of complaint, in part, alleges: On or about March 1st, 1940, the president of the defendant company, Frank P. Gravatt, advised one of the complainants that a contract had been entered into or was about to be made providing for the installation of kitchen equipment on the pier and the sale of food for a fee in addition to that to be charged for admission to the pier; complainants gave him direct notice that such acts would result in irreparable damage to them and would be in violation of the covenant, notwithstanding which, kitchen, soda fountain, and other equipment is being installed on the pier to be used in the preparation and sale of commodities, foodstuffs and beverages; and that defendant company, as owner and operator, has sold or permitted to be sold and will continue to sell such commodities or permit them to be sold on its pier.
On March 28th, 1940, the bill alleges, the City of Atlantic City, notwithstanding its position as trustee for the public, issued a mercantile license granting permission to operate a "hot dog" stand, a soft drinks counter and to sell "hot dogs" and soft drinks on a portion of the pier premises. When the city was solicited to join in this cause as a party complainant, it found itself in a position where it could not accuse the defendant company without accusing itself of fraud or of neglect of its duty as trustee. In LeGendre v. Goodridge, 46 N.J. Eq. 419;19 Atl. Rep. 543, Vice-Chancellor Van Fleet said (at p. 422):
"He (the trustee) occupied a position where, if he had consented to attack the validity of the deed by suit, he would have been compelled either to act contrary to his convictions of what he believed to be right, or to be faithless to his duty. The complainants have, I think, a clear right to be protected *Page 516 
against the dangers and mishaps which would almost unavoidably attend the prosecution of a suit, on their behalf, by a person thus situated, and which, if once suffered, would most probably be beyond judicial reparation. In my judgment, the complainant's right to maintain this action, in view of the facts just stated, is clear, and for the same reason I think the proper place ofthe executors, as parties to this suit, is that in which thecomplainants have put them, namely, as defendants." (Italics mine.)
If the City of Atlantic City is an "indispensable" party and the cause alleged against it is not severable from that alleged against the Atlantic City Steel Pier Company, this court would not be warranted in signing an order of removal. An indispensable party is one who has such an interest in the controversy that a final decree could not be rendered between the other parties to the cause without radically or injuriously affecting his interest, or without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience. Sioux City Terminal R. and W. Co. v. TrustCompany of North America, 22 C.C.A. 73; 82 Fed. Rep. 124, 126;Rogers v. Penebscot Mining Co. (C.C.A.), 154 Fed. Rep. 606;Steelman v. All Continent Corp., 121 N.J. Eq. 218;188 Atl. Rep. 817. Severability of controversies exists only where there is a separate and distinct cause of action, on which a separate and distinct suit might have been brought and complete relief afforded as to such cause of action, with all the parties on one side of that controversy citizens of different states from those on the other side. The whole subject-matter of the suit must be capable of being finally determined as between them, without the presence of any others originally made parties to the suit. Where the suit is not removable, this court is under no duty to surrender its jurisdiction.
There was a question at one time as to whether or not mere compliance with the federal statute, by filing a petition and a bond, removed the cause to the federal court and ousted the state court of jurisdiction. New Jersey has, however, adopted the rule that state courts have the right and the duty to examine the petition and record and to determine whether *Page 517 
the statutory requirements have been complied with and the cause is removable, and if not, to refuse to surrender jurisdiction.Johnson v. Gelston (Supreme Court), 3 N.J. Law *668;Gelston v. Johnson (Supreme Court), 3 N.J. Law *625; Ogden
v. Baker (Supreme Court), 13 N.J. Law 75; Upton v. NewJersey Southern R. Co. (Chancery), 25 N.J. Eq. 372; Boylan
v. Meeker (Supreme Court), 28 N.J. Law 274; Wanner v.Sisson (Chancery), 28 N.J. Eq. 117; National Union Bank ofDover v. Dodge (Supreme Court), 42 N.J. Law 316; NationalDocks, c., Railway Co. v. Pennsylvania Railroad Co.
(Chancery), 52 N.J. Eq. 58; 28 Atl. Rep. 71; affirmed (Courtof Errors and Appeals), 52 N.J. Eq. 590; 33 Atl. Rep. 50;Vermeuele v. Vermeuele (Supreme Court), 67 N.J. Law 219;54 Atl. Rep. 99; Holcombe v. Ames (Chancery), 87 N.J. Eq. 486;100 Atl. Rep. 609; Smathers v. Leith (Chancery), 92 N.J. Eq. 165; 111 Atl. Rep. 406; Bilecki v. Erie Railroad Co.
(Supreme Court), 101 N.J. Law 17; 127 Atl. Rep. 328; Piper v.Erie Railroad Co. (Supreme Court), 9 N.J. Mis. R. 40;152 Atl. Rep. 643; Liebesman v. Ackerson (Supreme Court),112 N.J. Law 31; 169 Atl. Rep. 699; George Weston, Ltd., v. NewYork Central Railroad Co. (Supreme Court), 115 N.J. Law 564;181 Atl. Rep. 18; Shapiro v. Christian Bahnsen, Inc. (Courtof Errors and Appeals), 117 N.J. Eq. 105; 175 Atl. Rep. 145;Steelman v. All Continent Corp. (Chancery), 121 N.J. Eq. 218; 188 Atl. Rep. 817; Goodman v. Grace Iron and Steel Co.
(Supreme Court), 125 N.J. Law 28; 13 Atl. Rep. 2d 228;Eckel v. Shell Eastern Petroleum Products (Chancery),113 N.J. Eq. 498; 167 Atl. Rep. 869; Arzheimer, for use of Karoly,
v. Firemen's Fund Indemnity Co. (Supreme Court),113 N.J. Law 269; 174 Atl. Rep. 240; McCarter v. American NewspaperGuild (Chancery), 118 N.J. Eq. 102; 177 Atl. Rep. 835; State
v. Mundet Cork Corp. (Chancery), 126 N.J. Eq. 100;8 Atl. Rep. 2d 105; Wucker Furniture Co. v. Furniture Salesmen'sUnion, C.I.O. Local 853 (Chancery), 126 N.J. Eq. 145;8 Atl. Rep. 2d 275; In re Law (Circuit Court), 14 N.J. Mis. R.593; 186 Atl. Rep. 528. In some eighteen of these cases, the state court refused to surrender jurisdiction. *Page 518 
Vice-Chancellor Van Fleet, in the National Docks Railway Co.Case, supra, said:
"* * * it is settled by repeated decisions of the Supreme Court of the United States that the state court is not required to let go its jurisdiction, until a case is made which, upon its face, shows that the defendant, asking for removal, can remove the suit as a matter of right. The decision of this question, then, is a duty which this court cannot escape." Citing Removal Cases,100 U.S. 457, 474; Crehore v. Ohio and M. Railroad Co.,131 U.S. 240, 244; Pennsylvania Co. v. Bender, 148 U.S. 255, 258. Mr. Justice Harlan, for the United States Supreme Court, said, in theCrehore Case:
"A case is not, in law, removed from the state court upon the ground that it involves a controversy between citizens of different states, unless, at the time the application for removal is made, the record upon its face shows it to be one that is removable."
Mr. Justice Minturn, for the New Jersey Supreme Court, in theBilecki Case, supra, said that a duty of inspection of the record was cast upon the state court, as a preliminary condition to removal. He added:
"It would seem obvious, therefore, that a duty of such importance to the parties, and so fundamental in its nature upon a right of a sovereign state to control its own records in the acts of its clerical officials, must necessarily involve an act of judicial discretion which in courts as constituted devolves upon the court eo nomine and not upon a member of its clerical staff."
The defendant company has called attention to the fact that complainants, in their bill, state that they made the city a party defendant after it neglected to take action against the company and refused to join as a party complainant. This, it argues, is conclusive upon me and I must hold the city to be a party complainant and determine that but one controversy exists — a cause between it and twenty complainants. Not so: the actual controversy or controversies must be ascertained and the court may disregard the particular position assigned to the parties by the draftsman of the bill. Removal Cases, supra; HarterTownship v. Kernochan, 103 U.S. *Page 519 562; 26 L.Ed. 411; Kiefer v. City of Idaho Falls,19 Fed. Rep. 2d 538.
In the well considered case of Kiefer v. City of IdahoFalls, supra, the United States District Court for the District of Idaho, E.D., said (at p. 539):
"It is undoubtedly the duty of the court, in determining whether there is the requisite diversity of citizenship, to arrange the parties with respect to the actual controversy, looking beyond the formal arrangement made by the bill. RemovalCases, 100 U.S. 457; 25 L.Ed. 593. But in doing so it must recognize the general rule that, where the record discloses abona fide controversy between the plaintiffs, who are citizens of the state in which the action is instituted, and the city and its officers, also citizens of the same state, or where the city and its officers are aligned with the non-resident defendant as being necessary parties and where their relations to the subject-matter or the position taken are on the same side of the dispute, and the rights of the plaintiffs by shifting the positions would not be protected, the cause is not removable."
And (at p. 540):
"The issue, then, here is clear and distinct, and it appears from the charges in the bill and the petition and the attitude of the defendants, that the parties are now arranged on opposite sides of the dispute, and that the defendant city and its officers have such a relation to it as to require that they be treated as necessary parties defendant. The doctrine is well settled that, where officers of public or private corporations have entered into an illegal contract with another, or in behalf of the public or private corporation have performed an unlawful act, which is questioned, they are regarded as necessary parties to the action, and, if residents of the same state with the plaintiff, the cause is not removable to the federal court.Central Railroad Company of New Jersey v. Mills, 113 U.S. 249;5 S.Ct. 456; 28 L.Ed. 949; East Tennessee, Virginia and GeorgiaRailroad Co. v. Grayson, 119 U.S. 240; 7 S.Ct. 190;30 L.Ed. 382; Venner v. Great Northern Railway Co., 209 U.S. 24;28 S.Ct. 328; 52 L.Ed. 666; State of Missouri, to the Use of PublicSchool Funds of New Madrid *Page 520 County v. New Madrid County et al. (C.E.),73 Fed. Rep. 304."
The bill alleges much more than the mere statement that because the city refused to join as a party complainant it was made a party defendant, to wit: That commodities have been recently sold on the pier; that the single issue is the violation of the restrictive covenant prohibiting sale of commodities on Steel Pier; that both the defendant city and the defendant company were bound by the terms of the permanent injunction against such sales; that the city is the trustee, in the matter of the enforcement of the restriction, for complainants and for all the citizens and property owners of the City of Atlantic City; that the alleged illegal sales of commodities and the sales claimed to be in contemplation, result and will result from the issuance, by the City of Atlantic City, of a mercantile license to make such sales; and, that the defendant city which, as trustee, should have enforced the restriction against sale of commodities, induced and permitted such sales by the issuance of the mercantile license, by refraining from attempting to enforce the restriction and by failing to seek enforcement of the decree of this court. The bill, in effect, alleges a conspiracy. As Vice-Chancellor Berry, in McCarter v. American NewspaperGuild, supra, citing many New Jersey cases, said: "It matters not whether the term `conspiracy' is used in the bill, what is important is that the allegations of the bill import a conspiracy."
The prayer of the bill does not seek the partial relief which might be granted in a suit against the defendant company alone, but prays complete relief in order to restore rights of the public and of property owners, granted or reserved in the easement deeds and fixed by the Chancery decree.
In Shapiro v. Christian Bahnsen, Inc., supra, the Court of Errors and Appeals, adopting the opinion of Vice-Chancellor Fielder, held:
"Complainant is not seeking the partial relief which might be afforded him in a suit against each defendant alone, but he wants complete relief in a single suit and by a single decree which will restore all the property (or its value) which Christian Bahnsen took from C. Bahnsen Company, Incorporated, *Page 521 
and complainant's whole claim cannot be finally determined andcomplete relief given him, without the presence of all defendantsas parties to his suit. Beside a common defense to such a suit, each defendant may have a separate defense but that fact will not make the cause of action on which complainant bases his suit, a separate controversy as to any defendant.
"`The petitioners' prayer for removal of the cause will be denied.'" (Italics mine.)
The test of separability is the cause of action stated by complainant and it must be regarded as joint or severable, as the complainant has averred it to be. Goodman v. Grace Iron andSteel Corp., supra, and authorities cited by Mr. Justice Heher. A defendant has no right to say that an action shall be severed which the plaintiff seeks to join. Pirie v. Tevdt,115 U.S. 41; 29 L.Ed. 331; 5 Sup. Ct. 1034; Powers v. Chesapeake andOhio Railroad Co., 169 U.S. 92; 18 Sup. Ct. 264; 42 L.Ed. 673;Alabama Great Southern Railroad Co. v. Thompson, 200 U.S. 206;26 S.Ct. 161; 50 L.Ed. 441; Little v. Giles, supra; Liebesman
v. Ackerson, supra. In the latter case (at p. 34), the New Jersey Supreme Court said:
"A separate defense may defeat a joint recovery, but it cannot deprive a plaintiff of his right to prosecute his suit to final decision in his own way. The cause of action is the subject-matter of the controversy, and that is, for all the purposes of the suit, whatever the plaintiff declares it to be in his pleadings."
In National Docks, c., Railway Co. v. Pennsylvania RailroadCo., supra, Vice-Chancellor Van Fleet said:
"* * * And it is also firmly settled that, in deciding whether or not a separable controversy exists between the plaintiff and the defendant seeking to remove, the cause of action alleged in the plaintiff's pleading must be accepted as the only criterion of decision, and that if it is there alleged that the wrong was committed by all the defendants jointly, or that the cause of action is joint, the suit is not removable. The utterances of the Supreme Court of the United States on this point are clear and decisive. * * * *Page 522 
"The Supreme Court of the United States has also repeatedly decided, as Mr. Justice Bradley declared in Little v. Giles,118 U.S. 506, 600 `that a suit brought against several defendants, some of whom are citizens of the same state with the plaintiff, charging them all as joint contractors or joint trespassers, cannot be removed into the United States court by those who are citizens of another state, although they allege in their petition for removal that they are not jointly interested or liable with the other defendants, and that their controversy with the plaintiff is a separate one.' The same rule must necessarily be applied to all wrongdoers who act in concert, whether they are called joint trespassers, tort feasors, disseisors, or by any other name. Where the wrong is joint, the remedy, to be complete and effectual, must be joint."
Even if the complainants were actually in error in making the City of Atlantic City a party defendant and in joining it with the Atlantic City Steel Pier Company, the defendants would not be entitled to remove this matter to the Federal District Court. Mr. Justice Bradley, for the Supreme Court of the United States, said, in Little v. Giles, supra.
"A defendant has no right to say that an action shall be several which a plaintiff elects to make joint. A separate defense may defeat a joint recovery but it cannot deprive a plaintiff of his right to prosecute his own suit to a final determination in his own way."
Vice-Chancellor Berry, in McCarter v. American NewspaperGuild, supra, cited Little v. Giles, quoted part of the quotation given above, and said:
"The law is settled that a suit brought against several defendants, some of whom are citizens of the same state with the plaintiff, charging them all as joint contractors or joint trespassers, cannot be removed into the United States court by those who are citizens of another state, although they allege that they are not jointly interested or liable with the other defendants, and that their controversy with the plaintiff is a separate one."
The bill of complaint in this cause seeks affirmative relief against both the defendant city and the defendant company *Page 523 
because of the alleged joint commission of a series of illegal acts and the threatened continuance of such acts, all in violation of the restriction in the easement deed and of the decree of this court. In Central Railroad Company of New Jersey
v. Mills, 113 U.S. 249; 28 L.Ed. 949, the Supreme Court of the United States held:
"There is no separate controversy between the plaintiffs and those directors who are citizens of Pennsylvania. The bill seeks affirmative relief against the directors, as well as against the two corporations, for one and the same illegal and fraudulent act; the single matter in controversy between the plaintiffs and all the defendants is the validity of that act; and unless it is determined that the action of the New Jersey corporation was invalid as against the plaintiffs, there can be no decree against any of the other defendants."
On this inquiry, all the allegations of complainants' bill are to be taken as confessed. National Docks, c., Railway Co. v.Pennsylvania Railroad Co., supra, and McCarter v. AmericanNewspaper Guild, supra. Thus it must be found from the record that the city, trustee for the public and complainant in the two earlier causes where this court and the Court of Errors and Appeals unequivocally declared illegal any violation of the restrictive covenant on Steel Pier, not only has failed in its trust but, issuing a mercantile license, has affirmatively joined with the defendant company to bring about such violations of the covenant and the decree. Assume, on this consideration, that this cause were removed, and the federal courts found that sales of commodities on this pier were not illegal and, assume also, a decree in New Jersey, in a new cause brought by another aggrieved party against the city, enjoining it from issuing any license for sale of commodities on the pier and compelling it to enforce the covenant. Such a result would obviously be inconsistent with equity and good conscience and would not finally determine the controversy. Where such a situation may be reasonably conceived, a cause should not be removed. Sioux City Terminal R. and W.Co. v. Trust Company of North America, supra; Rogers v.Penebscot Mining Co., supra, and Steelman v. All ContinentCorp., supra; Smathers v. Leith, supra; *Page 524 Holcombe v. Ames, supra, and National Docks, c., RailwayCo. v. Pennsylvania Railroad Co., supra. "To justify a removal, on the ground of a separate controversy between citizens of different states there must, by the very terms of the statute, be a controversy `which can be fully determined as between them;' and by the settled construction of this clause the whole subject-matter of the suit must be capable of being finally determined as between them, and complete relief afforded as to the separate cause of action, without the presence of others originally made parties to the suit." This quotation is fromNational Docks, c., Railway Co. v. Pennsylvania Railroad Co.,supra, and, in turn, quotes Mr. Justice Gray, in Torrence v.Shedd, 144 U.S. 527, 530, "All the wrongful acts and matters set forth are alleged to have been done and omitted by the defendants, acting in concert to effect a common purpose. There can be no doubt, therefore, that if the complainant shall, on the final hearing, establish the case made by its bill, it will demonstrate that it is entitled to the same measure of relief against both defendants. But in addition: The right which the complainant has acquired, was acquired against both defendants; the primary object of this suit is to enforce that right against both defendants; * * *."
The sole question presented for decision by this court at this time is the sufficiency of the petition. Goodman v. Grace Ironand Steel Co., supra; Liebesman v. Ackerson, supra, andGeorge Weston, Ltd., v. New York Central Railroad Co., supra.
Sufficiency depends upon whether or not the bill of complaint discloses a separable controversy involving the non-resident defendant who petitions for removal, and an indispensable party who is resident of this state. Steelman v. All ContinentCorp., supra, and Smathers v. Leith, supra. A private corporation is to be regarded as a citizen of the state under the laws of which it is created. Hall v. Virginia, 8 Wall. 168,177; 19 L.Ed. 457, 459; George Weston, Ltd., v. New YorkCentral Railroad Co., supra, and a municipal corporation of New Jersey is to be considered as a citizen of the state. Port ofSeattle v. Oregon and W. Railroad Co., 255 U.S. 56;41 S.Ct. 237; Mercer County v. Cowles, 7 Wall. 118; 19 L.Ed. 86; State
v. Mundet Cork Corp., supra. *Page 525 
I am convinced that the City of Atlantic City is an indispensable party to a just and equitable, a complete and final determination of the controversy between complainants and the defendant company. With an indispensable resident party on the same side of the controversy as the defendant company now seeking to remove, there is no severable cause; ergo, there is no right to remove.
No court has the right to abandon its own lawful jurisdiction when properly invoked, any more than it has to infringe upon the exclusive or paramount jurisdiction of another. If a state court wrongfully denies a petition of removal, the defendant can remain and defend himself without losing his right of removal; he can appeal from such denial and may eventually obtain a decision of the United States Supreme Court thereon. This court cannot be required to surrender what appears to it to be its rightful jurisdiction short of a determination by the federal court that the cause is removable. Unless and until there is such a determination, this court will not consider that it has lost jurisdiction of this cause.